IN THE
UNITED STATES COURT OF APPEALS
FOR THE
ELEVENTH CIRCUIT
ATLANTA, GEORGIA

_____

APPEAL NOS: 21-11990 & 21-11991
_____

UNITED STATES OF AMERICA
Plaintiff/Appellee

Versus

BRANTLEY SEYMORE
Defendant/Appellant

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

2:20-cr-00111-SPC-MRM-1 & 2:12-cr-58-JES-MRM

_____

INITIAL BRIEF
_____

Dane K. Chase, Esq.
Chase Law Florida, P.A.
111 2nd Ave NE, Suite 334
Saint Petersburg, FL 33701
Direct: (727) 350-0361
Email: dane@chaselawfloridapa.com
Florida Bar No. 0076448

Attorney for Appellant

APPEAL NO: 21-11990 & 21-11991

*United States of America v. Brantley Seymore*

**<u>CERTIFICATE OF INTERESTED PERSONS</u>**
**<u>AND CORPORATE DISCLOSURE STATEMENT</u>**

Pursuant to 11th Cir. R. 26-1, I hereby certify that the persons listed

below are interested in the outcome of this case:

1. Chappell, The Honorable Sheri Polster, U.S. District Court Judge

2. Chase, Dane K., Attorney for Appellant

3. Corrigan, The Honorable Timothy J., U.S. District Court Judge

4. Leeman, Michael V., Assistant United States Attorney

5. McCoy, The Honorable Mac R., U.S. Magistrate Judge

6. Mizell, The Honorable Nicholas P., U.S. Magistrate Judge

7. Rhodes, David P. Assistant United States Attorney

8. Seymore, Brantley, Defendant/Appellant

9. Sholl, Peter J., Assistant United States Attorney

10. Summers, George Ellis, Jr., Trial Counsel for Appellant

## PRELIMINARY STATEMENT

Citations to the record on appeal in Case No. 21-11990, Mr. Seymore's new law violation case, will be made by the letter "D", followed by the appropriate District Court Docket number, followed by the appropriate page number. Citations to the record on appeal in Case No. 21-11991, Mr. Seymore's revocation of supervised release proceedings, will be made by the letter "R", followed by the appropriate District Court Docket number, followed by the appropriate page number.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant, BRANTLEY SEYMORE, does not request oral argument. It is respectfully submitted that this Court will be able to resolve this matter based upon the brief submissions of the parties.

## CERTIFICATE OF STYLE AND FONT

This Brief is written in 14 point Times New Roman. To the best of Counsel's information and belief, it is 10 pitch.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................... I

PRELIMINARY STATEMENT ............................................... II

STATEMENT REGARDING ORAL ARGUMENT ............................ II

CERTIFICATE OF STYLE AND FONT ................................. II

TABLE OF CONTENTS ....................................................... III

TABLE OF AUTHORITIES ................................................. IV

STATEMENT OF JURISDICTION ....................................... 1

STATEMENT OF THE ISSUES ........................................... 1

STATEMENT OF THE CASE ............................................. 2

     Course of Proceedings and Disposition........................................ 2
     Statement of the Facts ................................................ 3
     Standard of Review ....................................................... 11

SUMMARY OF THE ARGUMENT...................................... 12

ARGUMENT AND CITATION OF AUTHORITY .............................. 13

   I.   MR. SEYMORE'S SENTENCE IS PROCEDURALLY
       UNREASONABLE.

CONLUSION ........................................................... 22

CERTIFICATE OF COMPLIANCE ..................................... 23

CERTIFICATE OF SERVICE ............................................. 23

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586,
169 L.Ed.2d 445 (2007)...............................................................13,16,17,19,20,21

*Greenlaw v. United States,* 554 U.S. 237, 128 S.Ct. 2559,
171 L.Ed.2d 399 (2008).................................................................................21

*Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229,
179 L. Ed. 2d 196 (2011)...............................................................................21

*Rosales-Mireles v. United States*, —— U.S. ——,
138 S. Ct. 1897, 201 L.Ed.2d 376 (2018)......................................................11,20,21

*United States v. Aguillard,* 217 F.3d 1319 (11th Cir.2000).....................................14

*United States v. Bankston*, 945 F.3d 1316 (11th Cir. 2019).....................11,19,20,21

*United States v. Blackie,* 548 F.3d 395 (6th Cir.2008)............................................17

*United States v. Bolds,* 511 F.3d 568 (6th Cir.2007).........................................16,17

*United States v. Campbell*, 473 F.3d 1345 (11th Cir. 2007) ........................13,14,15,
16,17,18,19,21

*United States v. Crawford,* 407 F.3d 1174 (11th Cir.2005).....................................15

*United States v. Grams,* 566 F.3d 683 (6th Cir.2009)............................................17

*United States v. Houston,* 529 F.3d 743 (6th Cir.2008) ........................................16

*United States v. Kontrol,* 554 F.3d 1089 (6th Cir.2009) .........................................16

*United States v. Martin,* 455 F.3d 1227 (11th Cir.2006)....................................15,19

*United States v. Peebles*, 624 F.3d 344 (6th Cir. 2010) ......................16,17,18,19,21

*United States v. Pugh,* 515 F.3d 1179 (11th Cir.2008).............................................13

*United States v. Shaw*, 560 F.3d 1230 (11th Cir. 2009) ..........................................13

*United States v. White,* 406 F.3d 827 (C.A.7 2005) ................................................ 21

*United States v. White,* 416 F.3d 1313 (11th Cir.2005) ................................. 14,15,18

## **Statutes**

Title 18 U.S.C. § 3231 ............................................................................................ 1

Title 18 U.S.C. § 3553 ............................................................... 10,13,14,15,16,21

Title 21 U.S.C. § 841 ............................................................................................ 2

Title 28 U.S.C. § 1291 ............................................................................................ 1

## **Rules**

11ᵗʰ Cir. R. 26-1 ..................................................................................................... I

Fed. R. App. P. 32(a)(7)(B) ................................................................................. 23

## STATEMENT OF JURISDICTION

Title 28 U.S.C. § 1291 provides that the Circuit Courts shall have jurisdiction over appeals from all final decisions of the district courts of the United States, except where direct review may be had in the Supreme Court.

The United States District Court, Middle District of Florida, Fort Myers Division, had jurisdiction pursuant to Title 18 U.S.C. § 3231. This is an appeal from a Final Judgment and Sentence, as well as a Judgment of Revocation entered by the District Court on June 8, 2021 and June 7, 2021 respectively. (D-45)(R-108). Mr. Seymore timely filed his Notice of Appeal on June 9, 2021. (D-47)(R-109).

## STATEMENT OF ISSUES

Whether Mr. Seymore's sentence is procedurally unreasonable?

## <u>STATEMENT OF THE CASE</u>

(i)      **Course of Proceedings and Disposition in the Court Below**

On September 9, 2020, a federal grand jury in the Middle District of
Florida, Fort Myers Division, returned a one-count Indictment naming Mr.
Seymore as the defendant. (D-1).  Count One charged that on or about May
20, 2020, in the Middle District of Florida, Mr. Seymore did knowingly and
intentionally possess with intent to distribute a controlled substance, involving
a mixture and substance containing a detectable amount of cocaine base, a
Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and
(b)(1)(C).  *Id*.  The Indictment also contained a forfeiture provision pursuant
to 21 U.S.C. § 853.  *Id*.  At the time the Indictment was filed, Mr. Seymore
was on supervised released for prior narcotics offenses, and revocation
proceedings were instituted against him.  (R-115).

On February 9, 2021, Mr. Seymore pled guilty without a written plea
agreement, and on February 24, 2021 admitted to violating the terms of his
supervised release. (D-54)(R-52).

A sentencing hearing was then scheduled, and a Presentence
Investigation Report (Hereinafter "PSR"), was prepared for purposes of
sentencing.  (D-37).  The sentencing court ultimately imposed a sentence of
151 months imprisonment followed by 36 months supervised release with

respect to Mr. Seymore's new law violation, and a consecutive sentence of 24 months imprisonment for his supervised release violations.  (D-45)(R-108).

Thereafter, Mr. Seymore filed a Notice of Appeal.  (D-47)(R-109).

(ii)   **Statement of Facts**

The PSR set forth the offense conduct as follows:

> 7. On May 20, 2020, detectives with the Lee County Sheriff's Office (LCSO) were executing a state search warrant at a residence located in North Fort Myers, Florida. During the execution of the warrant, a message appeared on the cellular telephone of one of the subjects of the search warrant suggesting a drug supplier was on their way to the house to make a delivery and would arrive within twenty minutes.

> 8. Approximately nineteen minutes later, law enforcement observed a silver Kia Optima bearing Florida license plate number IK05KP drive by the residence. The driver of the Kia, later identified as Brantley Seymore, appeared shocked and nervous when he noticed the law enforcement presence at the residence. Seymore quickly pulled into the driveway of a nearby residence, turned around, and exited the neighborhood.

> 9. Neighbors and bystanders who had gathered outside the residence being searched subsequently notified law enforcement that the Kia did not belong to the occupant of the home of the driveway in which the car turned around. Neighbors also told law enforcement they had seen the car before at the residence being searched and believed the driver to be a drug dealer or supplier for the residence.

> 10. Law enforcement conducted a traffic stop on the vehicle and confirmed Seymore was the sole

occupant. Upon exiting the vehicle, law enforcement observed a clear cellophane baggie with what appeared to be dozens of white cube-like items pre-packed in smaller baggies stuffed into Seymore's left shoe.

11. Presumptive field tests were positive for cocaine. The cocaine was broken into 50 individual baggies, each containing one cube. The total package weight of the cocaine was 13.0 grams.

12. Law enforcement also located a wad of various denominations of United States currency in Seymore's right rear pocket totaling $668.00. A total of $21.00 in additional loose bills was located on and around the driver's seat.

13. Seymore was arrested and charged by the State of Florida with Possession of Cocaine with Intent.

14. On May 21, 2020, LCSO detectives listened to telephone calls placed by Seymore from the Lee County Jail. Seymore utilized his personal identification number to place the calls. During three calls, Seymore admitted he was on his way to the residence that was the subject of the search warrant and was in possession of the cocaine base at the time he was intercepted by law enforcement.

15. The cocaine seized from Seymore's vehicle during the traffic stop was subsequently submitted to the Drug Enforcement Administration laboratory (DEA lab) for analysis and testing. The DEA lab subsequently identified the substance seized from Seymore's vehicle as 5.839 grams of cocaine base.

(D-37, at 3-4).

Pursuant to the PSR, Mr. Seymore's total offense level for his new law

violation was calculated to be 29, his criminal history category was set at VI, and his guideline imprisonment range was determined to be between 151 and 188 months imprisonment.  (D-37, at 6, 13, 22).

During sentencing, defense counsel argued:

> DEFENSE COUNSEL: Your Honor, in this case, as the Court's already mentioned, it's reviewed our sentencing memorandum and our recommendation to the Court is 120 months and it's really a two-tier argument. But, just to begin, I would point out we would be asking for 120 months on the new case, which, obviously, is a downward variance, but we'd also ask that, on the supervised release violation, that any time be concurrent. Certainly, if the Court gives him a guideline sentence, we would just ask that it be concurrent to the 120 months on the new case.
>
> The argument is, as we set forth in the sentencing memorandum, first, Mr. Seymore has lived a fairly difficult life. He was born into really extreme poverty. His father died of AIDS. His mother was physically abused in front of him. Mr. Seymore was sexually abused himself as a child, and he had a very difficult childhood. And, at some point, he began to suffer from very serious mental health issues. Namely, bipolar disorder II and posttraumatic stress disorder. These were undiagnosed for a very long time. And Dr. Lokitus, who wrote a -- I think it's a report to the Court, which was attached to the sentencing memorandum as Exhibit 1, did a really good job of summarizing sort of what -- how bipolar disorder affected Mr. Seymore and how it really affects his life. Namely, this is a disorder which is characterized by mood swings along with periods of impulsivity and poor judgment. He pointed out that in 40 to 70 percent of people who are not diagnosed

with bipolar disorder end up with a substance abuse problem because what happens is they self-medicate. They know something's wrong and they know they have to treat it, but they don't know it's a medical issue and they use drugs or alcohol. In his case, unfortunately, it was frequently cocaine and he ended up with a drug problem.

Dr. Lokitus pointed out that, between the concurrence of the bipolar disorder and the drug addiction, which frequently comes along with it, it's really not surprising that his life went down a different path and, in his case, made numerous poor judgments, including the resulting case.

So this is an individual who, certainly, what he's done is illegal and he understands that and he knows he needs to be punished, and we're certainly asking for a serious punishment, but we're also asking the Court to take into consideration the mitigation that Mr. Seymore has. And, in that case, he's an individual who's suffering from a serious mental health disorder and individual who had a very difficult childhood which, frankly, probably, if it didn't aggravate, may have been the cause for his mental health issues.

Your Honor, now, the second part of our argument relates to, yes, he absolutely is a career offender. Yes, he's absolutely, as under current Eleventh Circuit law, he is absolutely scored correctly, 151 to 188 months. But it's important to note, Your Honor, that two of the convictions are within a few months of each other in -- I believe it's 2012. One gets prosecuted in state court, one gets prosecuted in federal court. Both are drug distribution charges. Obviously, during that same timeframe, he was distributing drugs. That's why he was convicted. He was prosecuted under two different sovereigns and that's sometimes just how it goes, but he could have

just as easily been prosecuted by one court. It could have been in federal court, it could have been in state court. And, right now, by really just the fickle finger of fate, he would not be a career offender. It very well could have been prosecuted in such a manner that he would be sitting here with just one predicate and then his guidelines would be 30 to 37 months. And so, Your Honor, we recognize that he's properly scored, but we also point out to the Court that things could have been different and his guideline range would have been very different under those circumstances.

So, Your Honor, for those reasons, we would ask that he be sentenced to 120 months and that it be concurrent with whatever the sentence is in the supervised release violation. The only other things we would ask, we would ask that he be able to take advantage of any and all drug and alcohol programs that the Bureau of Prisons offers. In particular, the 500-hour program. We also would ask that he be able to take advantage of any and all mental health treatment that they might have. We would also ask if the Court would be willing to ask that he receive a mental health evaluation upon arrival at the Bureau of Prisons. The reason being he certainly is on medication now and we would certainly want that medication to continue so he doesn't degrade until he can finally be medicated. Also, Your Honor, we would ask that he be housed as close to home as possible. And, finally -- and I know that government's going to say that this is foreclosed by statute and it may be – he has a doctor's appointment on June 28th for a heart issue and we would just ask for self-surrender on or about July 1st. He's supposed to wear a heart monitor, which then will give readings that the doctor's going to evaluate.

In the alternative, if the Court agrees with the government that that is foreclosed and he must be

remanded today, we would ask also ask that, as soon as he reaches the Bureau of Prisons, we would just ask for evaluation that he be evaluated for any and all, I guess, heart issues so that whatever treatment he was going to receive, maybe the Bureau of Prisons would evaluate the same issue.

Thank you, Your Honor.

THE COURT: What is your recommendation for the violation?

DEFENSE COUNSEL: Your Honor, we just -- we would ask –

THE COURT: I know that you recommend that it be concurrent.

DEFENSE COUNSEL: Concurrent. Guideline sentence.

THE COURT: Okay.

DEFENSE COUNSEL: But just that it be concurrent.

(D-53, at 9-13).

The government responded:

THE PROSECUTOR:  We're asking for a sentence of 160 months on the indictment, Your Honor. That's slightly over the bottom of the guidelines range. Looking at Mr. Seymore -- I agree with a lot of what Mr. Summers said when you look at Mr. Seymore. There's some natural, I think, tug to pull down on his sentence. The amount of crack cocaine found here, for instance, wasn't an overwhelming amount. Some of the crack cocaine found in one of his two qualifying convictions, I believe, was 3

8

grams of crack cocaine. Again, not an overwhelming amount. But I think what's sort of missed in that is Mr. Seymore, prior to that even, had a federal -- another federal conviction for, by reading the presentence report, participation in a fairly significant drug conspiracy when he was 22 years old.

So I agree there's some back and forth tension here between Mr. Seymore's history. I think, also, Mr. Seymore is, again, on supervised release here, which I think sort of militates pulling the sentence a little bit higher, I should say.

We're asking for 160 months, Your Honor. I think that strikes the appropriate balance. I should also say, or want to say, Mr. Seymore's been out, which is fairly uncommon for drug defendants, and by all accounts, he's done very well while released. So that's to his credit.

We're asking for 160 months and then we would also be comfortable recommending a guideline sentence on his term of supervised release to run concurrent. 160 months is far more time than he's ever done in prison. I'm not sure that adding on another two years for supervised release is going to change things one way or another for Mr. Seymore. If 160 months doesn't get through to him, I'm not sure that 160 months plus two years is going to get through to him either.

So we're asking for the 160-month sentence and then a guideline sentence on supervised release to be run concurrent. I want to note, however, that probation disagrees and the guidelines disagree as well. Supervised release violations are -- should be run consecutively to any underlying criminal conduct, but the Court does have discretion to run those concurrently, if it would like to. The guideline

provision that addresses that, Your Honor, is 7B1.3(f).

(D-37, at 14-15).

Thereafter, the court imposed sentence stating, in relevant part, as follows:

> THE COURT:  The Court, in weighing all of the information before it, believes that a low end of the guideline sentence is appropriate and would decline to vary under the circumstances. I've looked at everything here, and, I think, in order to promote respect for the laws and provide just punishment, especially given the fact that you do have these prior drug offenses, that a low end of the guideline sentence is appropriate.
>
> Therefore, pursuant to Title 18 United States Code Section 3551 and 3553, it is the judgment of the Court that you be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 151 months. In looking at the violation of supervised release, pursuant to Chapter -- well, pursuant to the guidance to the Court, and I understand the Court does have the discretion, a violation of supervised release should run consecutive to the term of imprisonment imposed in this particular case. Specifically, you were on supervision and committed a new offense, and the Court takes that very seriously.
>
> I do understand that counsel's asking for a concurrent sentence, both counsel are asking for that, but I believe that it's important to send the message that if you are on supervised release and you commit new offenses, that you will be justly punished for that.

> Therefore, the Court, in regard to the violation of supervision in 12-cr-58 will run 24 months consecutive to your term of imprisonment imposed in this judgment. That will be 24 months on count one concurrent to 24 months on count two and consecutive to this particular charge in 20-cr-112. Or 111.
>
> Upon release from custody, you will serve a three-year term of supervised release. While on supervised release, you'll need to comply with the mandatory and standard conditions adopted by the Court in the Middle District.

(D-37, at 19-20).

This appeal follows.

(iii)   **Standard of Review**

The plain error standard of review requires the appellant to "establish that (1) an error occurred; (2) the error was obvious; (3) it affected his substantial rights in that it was prejudicial and not harmless; and (4) it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019) (citations and quotations omitted). "The Supreme Court has instructed that, once those 'conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error.'" *Id*. (citing, *Rosales-Mireles v. United States*, ––– U.S. –––, 138 S. Ct. 1897, 1905, 201 L.Ed.2d 376 (2018) (citation and punctuation omitted)).

## SUMMARY OF THE ARGUMENT

The district court plainly procedurally erred by failing to calculate and consider Mr. Seymore's guideline imprisonment range for his supervised release violations. Accordingly, Mr. Seymore is entitled to have his sentences reversed, and his case remanded for a new sentencing hearing.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

**I.  MR.  SEYMORE'S  SETNENCE  IS  PROCEDURALLY
UNREASONABLE.**

The district court procedurally erred by failing to calculate and/or

consider the guidelines range for Mr. Seymore's supervised release violations,

and, as such, he is entitled to a new sentencing hearing.

This Court has explained:

> We review sentencing decisions only for abuse of
> discretion, and we use a two-step process. First, we
> review to "ensure that the district court committed
> no significant procedural error,                such
> as failing to calculate (or     improperly calculating)
> the Guidelines range,   treating   the Guidelines as
> mandatory, failing to consider the § 3553(a) factors,
> selecting a sentence based on clearly erroneous
> facts,  or failing to adequately explain the chosen
> sentence-including an explanation for any deviation
> from     the Guidelines range." *Gall    v.    United
> States,* 552  U.S.  38,  128  S.Ct.  586,  597,  169
> L.Ed.2d  445  (2007); *United  States  v.  Pugh,* 515
> F.3d  1179,  1190  (11th  Cir.2008).  If  we  find  the
> sentence procedurally sound, the second step is to
> review the sentence's "substantive reasonableness"
> under the totality of the circumstances, including
> "the     extent    of    any    variance    from
> the Guidelines range." *Gall,* 128   S.Ct.   at   597.
> Sentences outside the guidelines are not presumed
> to be unreasonable, but we may take the extent of
> any     variance     into     our     calculus. *Id.*

*United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009).

In *United States v. Campbell*, 473 F.3d 1345 (11th Cir. 2007), the

defendant argued he was entitled to a new sentencing hearing because "the district court failed to consider the Guidelines and his advisory sentencing range under the Guidelines." *Campbell*, 473 F.3d at 1348.

> In *United States v. White,* 416 F.3d 1313, 1318 (11th Cir.2005), this court stated that upon determining that a defendant violated a condition of supervised release, the district court may revoke the term of supervision and impose a term of imprisonment after considering various factors set out in 18 U.S.C. § 3553(a). *Id.* (citing 18 U.S.C. § 3583(e)(3)). "One of the factors a court *must* consider ... is ... the sentencing *range* established [by] ... the applicable guidelines or policy statements issued by the Sentencing Commission." *White,* 416 F.3d at 1318 (citing 18 U.S.C. § 3553(a)(4)) (emphasis added). For sentences imposed upon revocation of supervised release, the recommended sentencing range is based on the classification of the conduct that resulted in the revocation and the criminal history category applicable at the time the defendant originally was sentenced to the term of supervision. U.S.S.G. §§ 7B1.1, 7B1.4. But because the Guidelines have always been advisory for sentences imposed upon revocation of supervised release, *White,* 416 F.3d at 1318, it is sufficient that there be "some indication" that "the district court was aware of and considered" the Guidelines, *United States v. Aguillard,* 217 F.3d 1319, 1320 (11th Cir.2000), which requires the court to consider "the sentencing *range* established" under the Guidelines. *White,* 416 F.3d at 1318 (emphasis added).
>
> Here, the district court never explicitly mentioned Campbell's advisory Guidelines range during the revocation hearing. Indeed, the district court never said the word "Guidelines" during the entire hearing.

Moreover, although the advisory range is based on, *inter alia,* the classification of the revocation-producing conduct, *see* U.S.S.G. § 7B1.1, the district court never mentioned the criminal classification of the crime for which Campbell's supervised release was revoked. Hence, we cannot determine from the record whether the district court considered the "sentencing range" established by the Guidelines or the policy statements issued by the Sentencing Commission. *See White,* 416 F.3d at 1318.

C. *Reasonableness of the Sentence*

Campbell also argues that because the district court never made an on-the-record consideration of his Guidelines range, this court cannot adequately determine whether the sentence is reasonable under *Booker.* He further contends that even if the record enables this court to review the reasonableness of the sentence, the sentence is not reasonable in light of the factors set forth in § 3553(a).

We do not reach the issue of whether Campbell's total sentence is reasonable because the district court failed to make an on-the-record consideration of the Guidelines range. "Before we conduct a reasonableness review of the ultimate sentence imposed, we first determine whether the district court correctly interpreted and applied the appropriate advisory Guidelines range." *United States v. Martin,* 455 F.3d 1227, 1235 (11th Cir.2006) (citations omitted); *see also United States v. Crawford,* 407 F.3d 1174, 1178 (11th Cir.2005). Here, however, we *cannot determine* whether the district court "correctly interpreted and applied the Guidelines to calculate the appropriate advisory Guidelines range" because, as discussed above, the district court never stated the Guidelines range and

15

> never even mentioned the word "Guidelines."
> Accordingly, we do not reach the issue of
> reasonableness.

*Campbell*, 473 F.3d at 1348–49 (footnotes omitted).

Similarly, in *United States v. Peebles*, 624 F.3d 344 (6th Cir. 2010), the

Court considered whether the district court procedurally erred by failing to

calculate the defendant's guideline sentence for supervised release violations

as follows:

> Sentences imposed for supervised release violations
> are reviewed "under the same abuse of discretion
> standard that we apply to sentences imposed
> following conviction." *United States v.
> Kontrol,* 554 F.3d 1089, 1092 (6th
> Cir.2009) (quoting *United States v. Bolds,* 511 F.3d
> 568, 572-73, 578 (6th Cir.2007)) (quotation marks
> omitted). The sentence may be overturned only if it
> is procedurally or substantively
> unreasonable. *Id.* (citing *United States v.
> Houston,* 529 F.3d 743, 753 (6th Cir.2008)).

> The first step in the review process is to determine,
> applying the abuse of discretion standard, whether
> the sentence imposed by the district court is
> procedurally reasonable. *Bolds,* 511 F.3d at 578-
> 79. A sentence is procedurally unreasonable if the
> district court fails to calculate or improperly
> calculates the Guidelines range, treats the
> Guidelines as mandatory, fails to consider
> the section 3553(a) factors, selects a sentence based
> on clearly erroneous facts, or fails to adequately
> explain the chosen sentence. *Id.*; *see also Gall v.
> United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169
> L.Ed.2d 445 (2007). The Guidelines are "the
> starting point and the initial benchmark" for all

sentencing decisions, *Gall,* 552 U.S. at 49, 128 S.Ct. 586, including sentences imposed for supervised release violations, *Bolds,* 511 F.3d at 579. We have repeatedly emphasized that the first step of reasonableness review is to "ensure that the district court 'correctly calculat[ed] the applicable Guidelines range.' " *Id.* (quoting *Gall,* 552 U.S. at 49, 128 S.Ct. 586) (alterations in original); *see also United States v. Grams,* 566 F.3d 683, 686 (6th Cir.2009) (concluding that the district judge "should have stated in open court" whether he adopted the Guidelines range calculated by the probation department in the presentence report); *United States v. Blackie,* 548 F.3d 395, 401-03 (6th Cir.2008) (concluding that a sentence is procedurally unreasonable where it is impossible to determine from the sentencing transcript what the calculated Guidelines range was and whether the sentence was within the range).

Here, the transcript of the sentencing hearing does not reflect that the district court addressed the Guidelines range at all. The applicable Guidelines range was not discussed during the hearing by either attorney or by the judge. Therefore, it is impossible to determine with certainty what sentencing range the district court relied on, and whether the district court meant to impose a sentence within or above that range. Because the district court did not calculate the appropriate Guidelines range, Peebles's sentence is procedurally unreasonable. Thus, we vacate Peebles's sentence and remand the case to the district court for resentencing.

*Peebles*, 624 F.3d at 347–48.

Here, like *Campbell*, the district court never explicitly mentioned Mr.

Seymore's advisory guidelines range as concerning his supervised release

violations during sentencing, and, like *Peebles*, "the transcript of the sentencing hearing does not reflect that the district court addressed the Guidelines range at all."  *Peebles*, 624 F.3d at 348.  "The applicable Guidelines range was not discussed during the hearing by either attorney or by the judge." *Id*. "Moreover, although the advisory range is based on, *inter alia,* the classification of the revocation-producing conduct, *see* U.S.S.G. § 7B1.1, the district court never mentioned the criminal classification of the crime for which [Ms. Seymore's] supervised release was revoked." *Campbell*, 473 F.3d at 1349. "Hence, [this Court] cannot determine from the record whether the district court considered the 'sentencing range' established by the Guidelines or the policy statements issued by the Sentencing Commission." *Campbell*, 473 F.3d at 1349 (citing, *White,* 416 F.3d at 1318). Accordingly, "it is impossible to determine with certainty what sentencing range the district court relied on, and whether the district court meant to impose a sentence within or above [or below] that range." *Peebles*, 624 F.3d at 348.  "Because the district court did not calculate the appropriate Guidelines range, [Mr. Seymore's] sentence is procedurally unreasonable."  *Id*.

Furthermore, the error constitutes plain error entitling Mr. Seymore to relief.  For an appellant to demonstrate plain error, he must "establish that (1) an error occurred; (2) the error was obvious; (3) it affected his substantial

rights in that it was prejudicial and not harmless; and (4) it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019) (citations and quotations omitted).  As explained *supra*, an error occurred, and that error is obvious. *See*, *Gall,* 552 U.S. 38, 128 S.Ct. at 597; *Campbell*, 473 F.3d at 1348–49; *Peebles*, 624 F.3d at 347–48.  Accordingly, the first and second plain error requirements have been met.  *See*, *Id*.  Furthermore, the error affected Mr. Seymore's substantial rights and seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

More specifically, in *Bankston*, the Court explained:

> "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, ––– U.S. ––––, 136 S. Ct. 1338, 1345, 194 L.Ed.2d 444 (2016). That showing of error satisfies the plain-error standard's third prong, prejudice—unless a case presents some "unusual circumstances." *Id*. at 1347. We find nothing unusual about the facts and circumstances of this case: following the government's recommendation, the district court sentenced Bankston to 130 months, the lowest end of his Guidelines range. Without the two-level enhancement for "use" of body armor, Bankston's Guidelines range is 110 to 137 months. We conclude that Bankston has shown a reasonable probability that the outcome would be different under the correct range.

> As for the plain-error standard's last factor, "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error." *Rosales-Mireles,* 138 S. Ct. at 1908. A faulty enhancement, therefore, "ordinarily will satisfy" the fourth prong, at least when the other three factors are met. *Id*. Bankston meets this test.

*Bankston*, 945 F.3d at1319.

Here, there is nothing unusual about Mr. Seymore's case, other than the fact the district court failed to calculate or consider his guideline imprisonment range.  Furthermore, its reasonably probable that the court would have arrived at a different sentence had it calculated and considered the guidelines, as a contrary finding would mean the guidelines were not relevant to the district court's sentencing decision, and that is simply not the case. *See*, *Gall,* 552 U.S. 38, 128 S.Ct. at 597 (The failure to calculate a defendant's guideline imprisonment range is a significant procedural error).  Accordingly, the third plain error requirement is met.  *See*, *Bankston*, 945 F.3d at1319. Finally, "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error," *Bankston*, 945 F.3d at1319 (quoting, *Rosales-Mireles,* 138 S. Ct. at 1908), and, as such, the fourth plain error requirement is likewise met. *See*, *Id*.

Consequently, the district court plainly procedurally erred by failing to calculate and consider Mr. Seymore's guideline imprisonment range for his supervised release violations, and, as such, the entirety of his sentence should be vacated, and his case should be remanded to the district court for a new sentencing hearing, where the guideline sentence is properly calculated and considered by the district court for both his supervised release violations and his substantive offenses. *See*, *Gall,* 552 U.S. 38, 128 S.Ct. 586, 597; *Campbell*, 473 F.3d at 1348–49; *Peebles*, 624 F.3d at 347–48; *Bankston*, 945 F.3d at 1319; *Rosales-Mireles,* 138 S. Ct. at 1908); *Pepper v. United States*, 562 U.S. 476, 507, 131 S. Ct. 1229, 1251, 179 L. Ed. 2d 196 (2011) ("Because a district court's 'original sentencing intent may be undermined by altering one portion of the calculus,' *United States v. White,* 406 F.3d 827, 832 (C.A.7 2005), an appellate court when reversing one part of a defendant's sentence "may vacate the entire sentence ... so that, on remand, the trial court can reconfigure the sentencing plan ... to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw v. United States,* 554 U.S. 237, 253, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008)).

## <u>CONCLUSION</u>

Based upon the argument and citation to authority set forth above, Mr. Seymore's Judgments and Sentences should be reversed, and his case should be remanded for a new sentencing hearing.

Respectfully submitted,

By: <u>/s/ Dane K. Chase</u>
     Dane K. Chase, Esquire
     Florida Bar No. 0076448
     Chase Law Florida, P.A.
     111 2nd Ave NE, Suite 334
     Saint Petersburg, Florida 33701
     Direct: (727) 350-0361
     Facsimile: (866) 284-1306
     Email: dane@chaselawfloridapa.com

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this Brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).  This Brief contains 5,768 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on March 21, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to counsel of record.

By: /s/ Dane K. Chase
Dane K. Chase, Esquire
Florida Bar No. 0076448