UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRANTLEY SEYMORE,

     Petitioner,

v.                                                                        Case Nos.:   2:23-cv-469-SPC-NPM
                                                                                              2:20-cr-111-SPC-NPM

UNITED STATES,

     Respondent.

_____/

**OPINION AND ORDER**

Before the Court is Petitioner Brantley Seymore's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Doc. 1).[1]  The United States has filed a Response in Opposition (Doc. 11), to which Seymore has replied (Doc. 16).  The motion is denied for the below reasons.

**BACKGROUND**

More than three years ago, a federal grand jury charged Seymore with one count of possessing with the intent to distribute crack cocaine.  (Cr-Doc. 1).  The Federal Public Defender's Office was appointed to represent him, and George Elis Summers, Jr. filed an appearance.  (Cr-Docs. 9, 13).  The United

---

[1] The Court cites to documents from Case No. 2:23-cv-469-SPC-NPM as Doc. _ and documents from 2:20-cr-111-SPC-NPM as Cr-Doc. _.

States filed a Notice of Maximum Penalties, Elements of Offense, Personalization of Elements and Factual Basis (Cr-Doc. 29) setting forth the potential penalties as up to twenty years of imprisonment. Seymore's plea of guilty was accepted without objection, and he was adjudicated guilty of Count One of the Indictment. (Cr-Doc. 33). The undersigned then sentenced him to 151 months of imprisonment, which the Eleventh Circuit affirmed. (Cr-Docs. 45, 57).

Seymore then timely filed his § 2255 Motion, asserting that counsel was ineffective for three reasons: (1) failing to communicate his options of going to trial rather than pleading guilty, and failing to conduct an adequate pretrial investigation; (2) failing to explain the Presentence Report (PSR) to Seymore before the sentencing hearing and failing to file substantive objections to the PSR; and (3) failing to object to the career offender classification. (Doc. 1 at 4-6). The United States opposes the motion.

**LEGAL STANDARDS**

**A. 28 U.S.C. § 2255**

A prisoner in federal custody may move for his sentence to be vacated, set aside, or corrected on four possible grounds: (1) the imposed sentence violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was over the maximum allowed by law; or (4) the imposed sentence is otherwise subject to collateral

attack.  28 U.S.C. § 2255(a).  A § 2255 motion "may not be a surrogate for a direct appeal."  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). The petitioner bears the burden of proof on a § 2255 motion.  *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) (citation omitted).

**B. Procedural Default**

Generally, a § 2255 petitioner may not raise a ground he did not argue on direct appeal.  *Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013).  This procedural default rule "is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 504 (2003). There are two exceptions to the procedural default rule—cause and actual prejudice, and actual innocence—neither of which applies here.

**C. Ineffective Assistance of Counsel**

Criminal defendants have a Sixth Amendment right to reasonably effective assistance of counsel.  In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief under the Sixth Amendment.  466 U.S. 668, 687-88 (1984).  A petitioner must show that (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense.  *Id.*  Failure to show either *Strickland* prong is fatal.  *See Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir.

2010) ("[A] court need not address both *Strickland* prongs if the petitioner fails to establish either of them").

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden*, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 1355 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which is a lesser showing than a preponderance of the evidence." *Id.* (cleaned up). "At the same time, 'it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding' because 'virtually every act or omission of counsel would meet that test.'" *Id.* (quoting *Strickland*, 466 U.S. at 693).

## D. Effect of a Guilty Plea

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Thus, when a § 2255 motion collaterally challenges a conviction obtained through a guilty plea, "the inquiry

is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). Alternatively, "[a] guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (cleaned up).

## DISCUSSION

### A. Ground 1: Guilty Plea or Trial and Investigation

Seymore argues that he could not participate in his own defense because there was no "reasonable communication" from his attorney from the beginning of the representation. He says that counsel discussed neither the possibility of a career offender enhancement nor any strategy if he opted to go to trial. (Doc. 1-1 at 11). But a review of the record—specifically the plea colloquy—shows otherwise.

At Seymore's change of plea hearing, he expressed his wish to plead guilty to Count One without a plea agreement. (Cr-Doc. 54 at 4). The Court explained that if he did so it would "become very difficult, if not impossible, for [him] to later change [his] mind"—Seymore confirmed he understood. (*Id.* at 5). Seymore also stated that he was thinking clearly, knew the importance of the proceeding, and what he was there to do. (*Id.* at). The Magistrate Judge thus found Seymore competent to plead guilty.

From there the Magistrate Judge advised Seymore of his rights, including the right to "maintain a plea of not guilty," to go to trial before a jury, to present evidence and witnesses, and the right to testify or not testify:

> THE COURT: Now, Mr. Seymore, if you plead guilty to count one of the indictment without the benefit of a plea agreement, you will waive and give up those rights I just told you about. There will not be a trial and, on your guilty plea, the District Judge will find you guilty of the offense charged in count one and will convict you of that offense.
>
> Sir, a plea of guilt admits the truth of the charge against you, but a plea of not guilty denies the charge. Has your attorney explained that difference to you and do you understand the difference between a plea of guilty and not guilty?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 11-12).

The Magistrate Judge also explained to Seymore the rights and defenses he would waive by pleading guilty like the right to challenge how the government got any evidence, statement, or confession, and the right to challenge rulings on appeal. Seymore remained steadfast, indicating he understood and had no questions. (*Id.* at 13). He stated that his attorney explained the charge against him, they discussed the charge with him, and his attorney answered all his questions. (*Id.* at 14).

The Magistrate Judge moved on to describe sentencing. He explained that a district judge would conduct his hearing and that she would review the United States Sentencing Guidelines and the PSR to impose a sentence. (*Id.*

at 18).  The Magistrate Judge warned Seymore that the district judge could

impose a sentence up to the maximum allowed by law and that the sentence

could be either more or less severe than recommended to her.  The Magistrate

Judge asked Seymore if his attorney had explained the factors the district

judge could consider in fashioning his sentence, including his criminal history.

(*Id.* at 19).  Seymore responded affirmatively:

> THE COURT: . . . Mr. Seymore, the sentence that the
> District Judge imposes in your case may be different than
> any estimated sentence that your attorney or anyone else
> has given you.  In fact, it might be higher than you expect.
> If that happens, you will still be bound by your guilty plea
> and you will not have the right to withdraw it.
>
> Sir, do you understand all these things I just explained to
> you about the sentencing process?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any questions?
>
> THE DEFENDANT: No, sir.

(*Id.* at 19-20).

What's more, Seymore admitted to all the essential facts as read by the

United States and to specific facts when questioned.  (*Id.* at 21-22, 23).

Seymore stated that he was pleading guilty freely and voluntarily, without

force or intimidation, and with no promises or assurances or knowledge of what

sentence he would receive.  (*Id.* at 24-25).

When asked again about his attorney, Seymore said he had enough time

with him and had no complaints about his representation:

> THE COURT: Mr. Seymore, you are represented by Mr. Summers of the Office of the Federal Public Defender. Have you discussed your case fully with him and explained everything you know about your case to him?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you had enough time to talk with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there anyone else you want to talk to about your case before you enter a guilty plea?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has your attorney done everything you've asked him to do for your case before your decision to enter a guilty plea today?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied with your attorney and the way he has represented you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any complaints about the way your attorney has represented you?
>
> THE DEFENDANT: No, sir.

(*Id.* at 25-26).  The Magistrate Judge thus found that the decision to plead guilty was freely, voluntarily, knowingly, and intelligently made and done with the advice of competent counsel with whom Seymore was satisfied.  (*Id.* at 28).

Although Seymore had no beef with his counsel at the change of plea hearing, he does now.  According to Seymore, his attorney did not discuss his

options of going to trial versus pleading guilty. So the Court turns to *Strickland* to evaluate Seymore's allegation.

The *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id*. at 59. Seymore makes no such showing. The plea colloquy shows that he was satisfied with his attorney, had adequate time to discuss plea options with counsel, and pleaded guilty voluntarily and knowing his sentence could not be predicted—even by his attorney.

Seymore even tries to argue that his plea did not negate the possibility that he would have gone to trial if his attorney had told him about the career offender enhancement and its consequences. Not so. Seymore's position is premised on the belief that he could have been offered a plea with a promise of no enhancement—but that is something the Government couldn't have done.

Seymore also maintains that his counsel failed to conduct an independent pretrial investigation like reweighing the seized drugs to find 5.6 grams instead of 13 grams. (Doc. 1-1 at 13). The record quickly disposes of the argument.

To start, counsel received discovery from the United States. (Cr-Doc. 15). The PSR applied a base offense level for an offense involving "at least 5.6 grams but less than 11.2 grams of cocaine base" because 5.839 grams of cocaine base was attributed to him. (Cr.-Doc. 37 at ¶ 21). In fact, Seymore's counsel made sure the Court understood he was not being attributed with thirteen grams at the sentencing hearing. (Cr-Doc. 53 at 4-5). So the Court finds no merit to the failing to investigate argument.[2] In any event, the argument is procedurally barred for not be raised on direct appeal.

Finally, Seymore's argument that the career offender enhancement would not have applied but for counsel's ineffectiveness lacks merit for the reasons explained below.

At bottom, Seymore cannot satisfy either *Strickland* prong to show his attorney provided him ineffective assistance of counsel in violation of the Sixth Amendment. The Court thus denies Ground 1.

---

[2] The Court also notes that lawyers "need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) (citing *Strickland*, 104 S. Ct. at 2066). So an attorney may rely on certain lines of defense, while excluding other available ones. *See id.* "[W]hether or not he investigated those other defenses is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." *Id.* Indeed, there is no absolute duty to investigate particular facts or a certain defense. Nor is there any requirement for counsel "to present every nonfrivolous defense" or mitigation evidence, even where not incompatible with case strategy. *See id.* at 1319 (citing *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995)).

**B. Ground 2: Counsel did not object to the PSR**

Next, Seymore argues that his attorney objected to PSR classifying him as a career offender but took a contradictory position later when he agreed that Seymore was a career offender under Eleventh Circuit precedent. (Doc. 1-1 at 14).

As background, the PSR considered Seymore to be a career offender under U.S.S.G. § 4B1.1(a) because he was forty-six years old when he committed the underlying drug offense and had two prior controlled substance offenses: (1) possessing with intent to sell, manufacture, or deliver cocaine, and (2) distributing heroin and aiding and abetting the distribution of over 28 grams of cocaine.[3] (*Id.* ¶¶ 21, 27). Because of the career offender status, Seymore's offense level jumped to 32.

As stated, Seymore's counsel objected to the PSR's career offender related paragraphs (27, 49, 55, 57, and 160). (Cr-Doc. 37 at 29-31). In doing so, he challenged Seymore's past offense of possessing cocaine with the intent to sell, manufacture, or deliver as a triggering prior offense for the career offender enhancement. But he argued so even knowing the Eleventh Circuit

---

[3] "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

has held otherwise.  Indeed, he made the argument for preservation purposes should the appellate court ever changes its mind later:

> Florida drug convictions under Florida Statutes § 893.13, which occur after May 13, 2002, do not require proof of knowledge of the illicit nature of a controlled substance as an element. *See* Fla. Stat.§ 893.101(2) (eff. May 13, 2002) (providing "knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter"); *State v. Adkins,* 96 So. 3d 412, 414-16 (Fla. 2012).[] Recognizing the Eleventh Circuit's precedent, Mr. Seymore respectfully maintains, for purposes of preservation, that his conviction for Cocaine-Possession with Intent to Sell Manufacture Deliver Etc. does not qualify as a "controlled substance offense" under the guidelines.

(Cr-Doc. 37 at 29).

At the sentencing hearing, Seymore confirmed that he discussed the PSR with his attorney, the lawyer answered his questions, and he confirmed the PSR's factual accuracy.  (Cr-Doc. 53 at 6).  Counsel again preserved his objection to the career offender enhancement: "We understand that the guidelines are correctly scored as the law currently is under the Eleventh Circuit, but if it changes, we want to preserve it for that purpose, Your Honor." (*Id.* at 7-8).  The undersigned thus overruled the objection based on Eleventh Circuit precedent.  (*Id.*)

In arguing ineffective assistance of counsel, Seymore portrays his attorney as flip-flopping on the career offender status.  Not so.  The record is clear that counsel also objected to the prior cocaine offense as a predicate

offense to Seymore career offender status for preservation reasons.    And

Seymore's attorney cannot be seen as ineffective for not "rais[ing] an objection

that would not succeed under current law, but which could succeed depending

on a forthcoming Supreme Court decision." *United States v. Finley*, 805 F.

App'x 823, 827 (11th Cir. 2020) (citations omitted); *see also United States v.*

*Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) ("In this circuit, we have a wall of

binding precedent that shuts out any contention that an attorney's failure to

anticipate a change in the law constitutes ineffective assistance of counsel.").

Because counsel raised the objection despite current precedent, he was not (nor

could be) ineffective for raising an objection in anticipated a future change in

the law.  The Court thus denies Ground 2.

## C. Ground 3: Career Offender Enhancement

Last, Seymore argues neither of his past drug offenses qualify as

predicate offenses for the career offender enhancement.  As stated, Seymore's

predicate offenses are two prior felony-controlled substance offenses from

2012: (1) possessing with intent to sell, manufacture, or distribute cocaine; and

(2) distributing a mixture or substance containing a detectable amount of

heroin, and aiding and abetting the distribution of over 28 grams of a crack-

cocaine.  The first was a state offense under Fla. Stat. § 893.13, and the second

was a federal one.  Seymore offers two reasons why they cannot serve as

predicate offenses—neither is persuasive.

Seymore first argues the career offender enhancement is void under *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022), *cert.* 143 S. Ct. 2457 (2023), because when he was convicted, Fla. Stat. § 893.13(1) was broader than the Sentencing Guidelines' definition that no longer includes ioflupane. Not so. Since 2014, Fla. Stat. § 893.13(1) has been both a serious drug offense and a controlled substance offense with no mens rea element. *See United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014). And the Eleventh Circuit has concluded—with the Supreme Court affirming—that § 893.13 convictions qualify as predicate controlled substance offenses for the career offender enhancement. *See Shular v. United States*, 140 S. Ct. 779, 784 (2020); *United States v. Pridgeon*, 853 F.3d 1192, 1198 (11th Cir. 2017).

Then *Jackson* came along in 2022. There, the Eleventh Circuit addressed the definition of a serious drug offense under the Armed Career Criminal Act—which does not even apply here. Even so, the court found the "only way to assess whether a prior federal drug conviction is a 'serious drug offense' is to apply the federal drug law and accompanying schedules in effect at the time of the prior federal drug conviction." *Jackson* at 859. Here, the federal law encompassed ioflupane until 2015 when it was removed. So when Seymore pleaded to selling cocaine in 2012, that conviction was not broader than federal law. (Cr-Doc. 37 at ¶ 48).

14

Seymore's second challenge to the career offender enhancement comes from *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023).  In *Dupree*, the Eleventh Circuit held that the definition of a "controlled substance offense" in § 4B1.2(b) does not include inchoate offenses.  57 F.4th at 1280.  Seymore seems to argue that his aiding and abetting crack cocaine federal offense thus cannot serve a predicate offense.  Not quite.

To start, *Dupree* was decided in January 2023, more than two years after Seymore's sentencing.  As the Eleventh Circuit has explained, "[f]or a new rule to be retroactive [on collateral review], the Supreme Court must make it retroactive to cases on collateral review."  *In re Joshua*, 224 F.3d 1281, 1283 (11th Cir. 2000) (citation omitted).  The Supreme Court has done no such thing.  Accordingly, *Dupree* offers no relief.  *See United States v. Lee*, No. 8:18-CR-572-SDM-AEP, 2023 WL 1781648, at *3 (M.D. Fla. Feb. 6, 2023) ("*Dupree* cannot be applied retroactively").  It does not apply retroactively to Seymore.

Even so, Seymore pleaded guilty to the separate offenses of (1) aiding and abetting the distribution of crack cocaine, and (2) distributing heroin.  (Cr.-Doc. 37 at ¶ 49).  And he was sentenced to 78 months' prison for both counts to run concurrently.  *See United States v. Seymore*, 2:21-cr-58-JES-MRM, Doc. 36 (M.D. Fla. Dec. 4, 2012).  So even without the aiding and abetting offense, Defendant was still sentenced to the substantive offense of distributing heroin

that stands as its own predicate offense to the career offender enhancement. Seymore's attorney thus cannot be defective for making meritless arguments.

At bottom, Seymore's attorney cannot be deemed constitutionally ineffective for failing to object to a designation dictated by binding law at the time of the allegedly deficient performance. *See Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." (internal quotation marks omitted)); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986) ("[D]efendants are not entitled to an attorney capable of foreseeing the future development of constitutional law."). The Court thus denies Ground 3.

**D. Evidentiary Hearing**

The Court reaches the above conclusions with no evidentiary hearing because Seymore's "motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b). The Court understands that generally "[i]f the petitioner alleges facts, that if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017). Although a petitioner need only allege, not prove, facts that would entitle him to relief, the alleged facts must be reasonably specific

16

and non-conclusory. *Allen v. Sec'y, Fla. Dep't or Corr.*, 611 F.3d 740, 745 (11th Cir. 2010). And if the petitioner's allegations are "affirmatively contradicted by the record" and "patently frivolous," the court need not hold an evidentiary hearing—which is the situation here. The Court thus need not hold an evidentiary hearing to decide Seymore's § 2255 motion.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking relief under § 2255 has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must show "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (citations omitted). Seymore has not made the requisite showing and may not have a certificate of appealability on any ground of his Motion.

Accordingly, it is

**ORDERED:**

1. Petitioner Brantley Seymore's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1; Cr-Doc. 60) is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment against Seymore and for the United States, cross-file this Opinion and Order in the companion criminal case, terminate any deadlines, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on January 4, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record